## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| BRIAN HUGHS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:20-cv-01566-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| ROYAL ENERGY RESOURCES, INC. and | ) | |
| WILLIAM TUORTO, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The following matter is before the court on plaintiff Brian Hughs' ("Hughs") motion to dismiss counterclaims, ECF No. 20. For the reasons set forth below, the court grants the motion.

## I.  BACKGROUND

Until May 9, 2019, plaintiff Brian Hughs was the Chief Commercial Officer at defendant Royal Energy Resources ("Royal"), a publicly held North American energy recovery company that focuses on the acquisition of coal, gas, and renewable energy assets. ECF No. 10 at ¶¶ 15, 16. Royal is the owner of Rhino GP, LLC ("Rhino GP"), the general partner of a publicly traded coal-producing limited partnership called Rhino Resource Partners LP ("Rhino"). Id. at ¶17. Hughs was on the board of directors of both Royal and Rhino. Id. at ¶15. Defendant William Tuorto ("Tuorto") is the chief executive officer of Royal, the only other director of Royal, and one of several directors of Rhino GP. Id. at ¶19. In December 2018, Hughs allegedly received information from a third party concerning alleged misconduct by Tuorto in connection with Rhino's sale of a mining complex in Ohio called Sands Hill ("Sands Hill"). Compl. at ¶3. Specifically,

1

Hughs alleges he received information that Tuorto (1) improperly benefited from Rhino's sale of Sands Hills, and Sand Hill's subsequent sale of its limestone operations to a company called Melvin Stone ("Melvin Stone") in April 2018; and (2) improperly recommended that Rhino accept a deal with Sands Hill that would disadvantage Rhino. Id. at ¶60.  Hughs reported Tuorto's misconduct to the conflicts committee of Rhino GP and, according to Hughs, shortly thereafter reported the misconduct to the Securities and Exchange Commission ("SEC").  ECF No. 10 at ¶5, Compl. at 5.  Hughs allegedly reported the violations to the SEC on April 30, 2019 and was fired on May 9, 2019. Compl. at ¶8.  The terms of Hughs' employment were governed by an October 13, 2015 employment agreement between Hughs and Royal (the "Agreement") and an amendment to that agreement dated January 31, 2018 (the "Amendment").  ECF No. 10 at ¶10. Under the Agreement and Amendment, Hughs is entitled to severance if he is terminated without cause.  Compl. at ¶26.  Royal claims that it had cause to terminate Hughs based on various acts of misconduct, such that he is not entitled to severance.  ECF No. 10 at ¶90.  On July 25, 2019, Hughs filed a whistleblower action under the Sarbanes-Oxley Act with the Occupational Safety and Health Administration ("OSHA").  Id. at ¶101.  OSHA did not rule on that action.  Id. at ¶13.

On April 22, 2020, Hughs filed this action for breach of contract, breach of contract accompanied by a fraudulent act, and whistleblower retaliation in violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank"), 15 U.S.C. § 78u-6 et seq. and in violation of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A(a).  Compl.  On August 14, 2020, Royal and Tuorto (collectively, the "defendants") timely filed an answer and counterclaims for defamation and theft.  ECF

No. 10.  On September 18, 2020, Hughs moved to dismiss defendants' counterclaims for failure to state a claim.  ECF No. 20.  On October 9, 2020, Royal responded.  ECF No. 22.  On October 23, 2020, Hughs replied.  ECF No. 26.  As such, the motion to dismiss is now ripe for review.

## II.  STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief.  Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the [pleading] in a light most favorable to the [counter] plaintiff.  Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the [counter]

plaintiff pleads factual content that allows the court to draw the reasonable inference that the [counter] defendant is liable for the misconduct alleged." Id.

### III.  DISCUSSION

Tuorto brings counterclaims of defamation against Hughs, and Royal brings a theft counterclaim against Hughs.  Hughs moves to dismiss these counterclaims under Rule 12(b)(6).  The court addresses each counterclaim below, finding dismissal warranted for both.

#### A.  Defamation

Tuorto alleges that, in late 2018, Hughs and Yorktown Partners, LLC ("Yorktown") entered into a conspiracy to orchestrate the removal of Royal as general partner of Rhino so that Yorktown or its affiliates could become the general partner.  ECF No. 10 at 20, ¶1.  As part of this conspiracy, Hughs used "a fantastic and non-credible story" relayed to him by a third party concerning Tuorto's misconduct in connection with the Sands Hill transactions.  Id. at ¶2.  The court identifies three categories of defamatory statements that Tuorto alleges are attributable to Hughs.  First, Tuorto alleges that the statements in Hughs' Sarbanes-Oxley complaint submitted to OSHA were defamatory.  See id. at 22-23, ¶7.  Specifically, Tuorto takes issue with Hughs' statement that Tuorto failed to "[disclose] Melvin [Stone]'s interest [in Sands Hill] to Rhino, which should have benefited from [Sand Hill's] sale of limestone."  Id.  Second, Tuorto alleges that Hughs "repeated some or all of these allegations to Shannon Burnett, various Royal shareholders, Rhino and Royal's D&O insurance company, Indemnity National Insurance Company, Rhino management, Cedarview Master Opportunities Fund, LP, Colbeck Capital Management, LLC, and others, for the purpose of defaming Mr. Tuorto."  Id. at

23-24, ¶10.  According to Tuorto, Hughs stated to third parties "that Mr. Tuorto was

going to jail for these alleged activities . . . ."  Id. at 24, ¶11.  Third, Tuorto argues that

Hughs is "responsible for [defamatory] statements made by representatives of Yorktown

because there were made as his agents in furtherance of a common conspiracy between

Hughs and Yorktown . . . ."  Id. at 24, ¶17.  Specifically, Tuorto cites Laz Nikeas, Bryan

Lawrence, Ian Ganzer and Ron Phillips ("Phillips") as representatives of Yorktown who

made defamatory statements.  During a hearing held on November 5, 2020, the parties

confirmed that the alleged defamatory statements were made in South Carolina and that

South Carolina law applies to the claims.  As such, the court reviews defamation law in

South Carolina generally and then discusses its application to each category of allegedly

defamatory statements below.

### 1. Defamation in South Carolina, Generally

The tort of defamation allows a counter plaintiff to recover for injury to his or her

reputation as the result of the counter defendant's communications to others of a false

message about the plaintiff.  Holtzscheiter v. Thomson Newspapers, Inc., 506 S.E.2d 497,

502 (S.C. 1998); Murray v. Holnam, Inc., 542 S.E.2d 743, 748 (S.C. Ct. App. 2001).  To

recover for defamation, the counter plaintiff must establish by a preponderance of the

evidence, that there was (1) a false and defamatory statement by the counter defendant

concerning the counter plaintiff; (2) an unprivileged communication; (3) fault on the

counter defendant's part in publishing the statement; and (4) either actionability of the

statement irrespective of special harm or the existence of special harm to the counter

plaintiff caused by the publication.  Holtzscheiter, 506 S.E.2d at 506; Fleming v.

Rose, 567 S.E.2d 857, 860 (S.C. 2002).  Here, Hughs only argues that defendants have

not satisfied the first two elements and thus their defamation claim should be dismissed.
As such, the court reviews these two elements in more detail below.

### a. False and Defamatory Statement

The first element of defamation is a false and defamatory statement by the counter defendant concerning the counter plaintiff.  Under the common law, a defamatory communication was presumed to be false, but truth could be asserted as an affirmative defense.  Holtzscheiter, 506 S.E.2d at 506.  "A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating with him."  Id. at 513.  "To prevail in a defamation action, the [counter] plaintiff must establish that the [counter] defendant's statement referred to some ascertainable person and that the [counter] plaintiff was the person to whom the statement referred."  Burns v. Gardner, 493 S.E.2d 356, 359 (S.C. Ct. App. 1997).  A complaint that does not "state with specificity the time, place, medium, and listener of the alleged defamatory statements" fails to state a claim for defamation.  Doe v. Cannon, 2017 WL 591121, at *1 (D.S.C. Feb. 14, 2017); see Carson v. Emergency MD, LLC, 2020 WL 5077655, at *5 (D.S.C. Aug. 25, 2020) ("Many courts applying South Carolina law have found that a lack of specificity in a plaintiff's allegations regarding a defamation claim warrants dismissal.").  "Each act of defamation is a separate tort that, in most instances, a [counter] plaintiff must specifically allege."  Doe v. McGowan, 2017 WL 573619, at *3 (D.S.C. Jan. 5, 2017), report and recommendation adopted, 2017 WL 571487 (D.S.C. Feb. 13, 2017) (citations omitted).  A counter "defendant cannot be expected to defend against an allegation that [the counter

defendant] defamed [the counter p]laintiff by making a statement heard by unknown persons at an unknown place at an unknown time." Id. (internal citation omitted).

The trial court must initially determine if the communication is reasonably capable of conveying a defamatory meaning. Holtzscheiter, 506 S.E.2d at 513; White v. Wilkerson, 493 S.E.2d 345, 347 (S.C. 1997). If the defamatory meaning of a message or statement is obvious on the face of the statement, the statement is defamatory per se. Holtzscheiter, 506 S.E.2d at 501. "If the defamatory meaning is not clear unless the hearer knows the facts or circumstances not contained in the statement itself, then the statement is defamatory per quod. In cases involving defamation per quod, the [counter] plaintiff must introduce facts extrinsic to the statement itself in order to prove a defamatory meaning." Id. "If the question is one on which reasonable minds might differ, then it is for the jury to determine which of the two permissible views they will take." Id. at 512; Parrish v. Allison, 656 S.E.2d 382, 388–89 (S.C. Ct. App. 2007)

### b. Unprivileged Communication

The second element of defamation is an unprivileged publication to a third party. See Riley v. Askin & Marine Co., 132 S.E. 584 (S.C. 1926). "No matter what a person may write, if it is not published, there is of course no liability, since no one is injured." Carver v. Morrow, 48 S.E.2d 814, 816 (S.C. 1948). The publication of defamatory matter is its communication, intentionally or by a negligent act, to a third party—someone other than the person defamed. Holtzscheiter, 506 S.E.2d at 507. "An absolute privilege exists as to any utterance arising out of the judicial proceeding and having any reasonable relation to it, including preliminary steps leading to judicial action of any official nature provided those steps bear reasonable relationship to it." Crowell v.

7

Herring, 392 S.E.2d 464, 467 (S.C. Ct. App. 1990); see Williams v. Force Prot. Indus., Inc., 2012 WL 10844374, at *1 (S.C. Ct. App. June 20, 2012) (finding that statements to the South Carolina Human Affairs Commission were privileged). Additionally, a statement is conditionally privileged if the following elements are met: "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." Manley v. Manley, 353 S.E.2d 312, 315 (S.C. Ct. App. 1987). "Conditional privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits." Id.

## 2. Statements in Hughs' Sarbanes-Oxley Complaint

Tuorto only specifically alleges one statement in the Sarbanes-Oxley complaint as defamatory—Hughs' statement that Tuorto failed to "[disclose] Melvin [Stone]'s interest to Rhino, which should have benefited from the sale of limestone." ECF No. 10 at 23, ¶7. Although unclear, Tuorto also appears to allege that Hughs made another defamatory statement in his Sarbanes-Oxley complaint that implicates a company owned by a friend and business partner of Tuorto, Red Hill. See Compl. at ¶38. In this statement, Hughs allegedly asserted that "Red Hill had underreported coal shipments, and thus a royalty that it owed Royal on those coal shipments." ECF No. 10 at 23, ¶8. The court takes issue with Tuorto's failure to specifically allege when, where, and to whom Hughs allegedly made these statements. However, viewing the claim in the light most favorable to Tuorto, the court will assume the statement was made in the Sarbanes-Oxley complaint. Still, the court fails to see how this statement defames Tuorto, either on its face or in the context of the facts alleged by Tuorto. Instead, the statement only alleges

misconduct by Red Hill, which has only a nebulous connection to Tuorto through his relationship with the owner. Thus, the court finds that Tuorto has not stated a claim for defamation in connection with this statement.

Even if the statements in the Sarbanes-Oxley complaint were defamatory, the court agrees with Hughs that any statements in the complaint are privileged. The statement was written in a complaint to OSHA related to workplace discrimination, which certainly "aris[es] out of [a] judicial proceeding" or has "any reasonable relation to it, including preliminary steps . . . ." See Crowell, 392 S.E.2d at 467. As such, the court finds that Tuorto has not stated a claim for defamation for any statement within Hughs' Sarbanes-Oxley complaint.

### 3. Allegations Repeated to Third Parties

Tuorto also fails to state a claim for defamation by alleging that Hughs "repeated some or all of these allegations to Shannon Burnett, various Royal shareholders, Rhino and Royal's D&O insurance company, Indemnity National Insurance Company, Rhino management, Cedarview Master Opportunities Fund, LP, Colbeck Capital Management, LLC, and others, for the purpose of defaming Mr. Tuorto." ECF No. 10 at 23-24, ¶10. As articulated in the counterclaim, these allegations fail to set forth any defamatory statement with sufficient specificity.

In the response to the motion to dismiss, Tuorto attempts to salvage his claim with respect to the statement made to the "D&O insurance carrier" by attaching a copy of the letter at issue and alleging additional details regarding that statement, including the time and place of the statement and the medium in which it was made. ECF No. 22-1. However, Tuorto did not request leave to amend the answer and counterclaims to include

9

these allegations.  Nevertheless, Hughs argues that any statements in this letter are absolutely and qualifiedly privileged.  ECF No. 26 at 4-5 (citing Crowell, 392 S.E.2d at 467 (holding that statements made during the course of an internal investigation were absolutely privileged inasmuch as they bore relation to a judicial proceeding)).

Upon review, the insurance letter is not defamatory on its face or in the context of the facts alleged by Tuorto.  The letter only provides notice to the insurer, pursuant to the reporting provisions of the policies with that insurer, that Royal retained outside counsel to assist in an internal investigation surrounding Rhino's sale of an asset to a third party. The letter specifically notes that "there has been no suggestion to this point of any wrongdoing by Royal or its directors and officers."  ECF No. 22-1 at 6-7.  Indeed, Tuorto is not mentioned by name at all in the letter.  Moreover, Hughs also asks the insurer in the letter to "treat this notice and all communications and facts relating to the matters set forth in the notice with discretion and confidentiality."  Id.  The court finds that this letter is not defamatory as it does not tend to harm the reputation of Tuorto, on its face or in light of the facts alleged by Tuorto.  Moreover, the court finds the letter is conditionally privileged as it was made in good faith, with an interest to be upheld, limited in scope, on proper occasion, and published in a proper manner to proper parties only.  The insurance letter may also sufficiently relate to a judicial proceeding such that it is absolutely privileged, particularly since the letter relates to coverage for legal counsel in connection to the company's internal investigation.  However, the court need not decide this issue. The letter is not defamatory and is conditionally privileged, and, accordingly, Tuorto has failed to state a claim for defamation with respect to this letter.

With respect to any other claim that Hughs "repeated some or all of the allegations" to various individuals, Tuorto fails to sufficiently identify the statements at issue. Rather, Tuorto only states that Hughs "repeated some or all of these allegations" to the various individuals and alleged that Tuorto was going to jail to some or all of these individuals." Id. at 24, ¶11. This will not suffice. Tuorto also fails to allege any time, place, or medium of these alleged defamatory statements, much less with the required specificity. As such, Tuorto fails to state a claim for defamation with respect to these allegations. See McGowan, 2017 WL 573619, at *3 ("Each act of defamation is a separate tort that, in most instances, a [counter] plaintiff must specifically allege."); McNeil v. S.C. Dep't of Corr., 743 S.E.2d 843, 848 (S.C. Ct. App. 2013) (upholding dismissal of a defamation claim where the plaintiff "did not set forth with any specificity what the alleged false statements were," did not allege that the statements "were unprivileged," and did not assert to whom they were made).

### 4. Co-Conspirator Statements

Tuorto lastly claims that Hughs "is responsible for statements made by representatives of Yorktown because there [sic] were made as his agents in furtherance of a common conspiracy between Hughs and Yorktown to enable Yorktown to take over the general partner of Rhino." ECF No. 10 at 24, ¶17.

To begin, the court notes that Tuorto again fatally fails to set forth the alleged defamatory statements with specificity. This failure alone warrants dismissal of Tuorto's defamation claim with respect to these statements. In his response and an attached affidavit of Tuorto, Tuorto attempts to allege additional facts regarding statements made by Phillips to salvage his claim. However, Tuorto has not requested leave to amend his

answer and counterclaims to include these additional facts, and as such, the court need not consider these additional facts.

Moreover, Tuorto does not cite, and this court could not locate, any authority to support the proposition that a claim for defamation exists against an individual based on the statements of co-conspirators. To make matters worse, neither Tuorto nor Royal plead civil conspiracy in their counterclaims. Even if the court were to construe Tuorto's counterclaims as pleading civil conspiracy, the claim fails.

"The tort of civil conspiracy has three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing special damage." Hackworth v. Greywood at Hammett, LLC, 682 S.E.2d 871, 874 (S.C. Ct. App. 2009). In a civil conspiracy claim, one must plead additional acts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim. Id. at 875 ("A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint."). "The difference between civil and criminal conspiracy is in criminal conspiracy, the gravamen of the offense is the agreement itself, whereas, in civil conspiracy, the gravamen of the tort is the damage resulting from an overt act done pursuant to a common design." Id. "Moreover, because the quiddity of a civil conspiracy claim is the special damage resulting to the [counter] plaintiff, the damages alleged must go beyond the damages alleged in other causes of action." Id. "Special damages are those elements of damages that are the natural, but not the necessary or usual, consequence of the [counter] defendant's conduct." Id. "General damages are inferred by the law itself, as they are

the immediate, direct, and proximate result of the act complained of." Id. "Special damages, on the other hand, are not implied at law because they do not necessarily result from the wrong." Id. "Special damages must, therefore, be specifically alleged in the [counterclaim] to avoid surprise to the other party." Id. "If a [counter] plaintiff merely repeats the damages from another claim instead of specifically listing special damages as part of their civil conspiracy claim, their conspiracy claim should be dismissed." Id.

Tuorto does not allege any acts in furtherance of the conspiracy other than the alleged defamatory statements. The failure to properly plead such acts merits dismissal of a conspiracy claim. Id. Additionally, Tuorto does not allege any special damages as a result of the alleged civil conspiracy. Rather, Tuorto only alleges damages "[a]s a result of Hughs' and Yorktown's defamatory statements about Mr. Tuorto." ECF No. 10 at 25. Tuorto fails to plead any damages other than general damages which arise for the alleged defamatory statements, thus cannot state a claim of defamation against Hughs for the statements of Phillips and others on the basis of civil conspiracy. See Paradis v. Charleston Cty. Sch. Dist., 819 S.E.2d 147, 151 (S.C. Ct. App. 2018) (dismissing civil conspiracy claim where plaintiff "failed to plead any damages other than the general damages which arise from alleged defamatory acts").

In sum, the court finds that Tuorto fails to state any claim for defamation against Hughs and dismisses Tuorto's defamation claims.

### B. Theft

Royal brings a counterclaim against Hughs for "theft," alleging that in December 2018, Royal approved a bonus of $100,000 for Hughs. Despite the fact that Royal was required to withhold federal and state taxes from this bonus. Royal alleges, Hughs

"unilaterally took $100,000 from Royal's bank account," forcing Royal to declare Hughs' bonus as $152,332.92. ECF No. 10 at 25. As Hughs points out, it is unclear what cause of action Royal attempts to bring by alleging "theft." However, viewing the complaint in the light most favorable to Royal, the court construes Royal's allegations as a claim for conversion.

Conversion is the unauthorized exercise of ownership over the personal property of another. Sherer–Gillete Co. v. Moore–Barnes Co., 103 S.E. 766 (S.C. 1920). To prevail in an action for conversion, the counter plaintiff must prove either title or right to possession of the property at the time of the alleged conversion. Causey v. Blanton, 314 S.E.2d 346 (S.C. Ct. App. 1984). Conversion cannot arise from the counter defendant's exercise of a legal right over the property. Castell v. Stephenson Finance Co., 135 S.E.2d 311 (S.C. 1964). There can be no conversion of money unless there is an obligation on the defendant to deliver a specific, identifiable fund to the plaintiff. Dawkins v. National Liberty Life Insurance Co., 263 F.Supp. 119 (D.S.C. 1967).

Hughs argues that Royal has not stated a claim for conversion because (1) the tax money that Royal alleges should have been withheld was Hughs' property at the time; and (2) Royal does not allege that it made a demand to return the money. Hughs cites a Third Circuit case to support his argument that the withholding taxes were, in fact, his property. As explained in that case,

> Withholding taxes are ordinarily never considered property of the employer having the duty to withhold. Initially, the tax monies are the property of the employees from whose wages the monies are withheld, and after the withholding is accomplished, 26 U.S.C. Section 7501(a) provides that the monies belong to the United States and are held in trust by the employer.

14

Begier v. U.S., I.R.S., 878 F.2d 762, 770 (3d Cir. 1989), aff'd sub nom. Begier v. I.R.S.,

496 U.S. 53 (1990) (internal citations omitted).

      Borrowing from Beiger, the court finds that the tax money was Hughs' property at

the time he "took" it from Royal's bank account because it was never withheld by Royal.

See 26 U.S.C. § 7501 ("Whenever any person is required to collect or withhold any

internal revenue tax from any other person and to pay over such tax to the United States,

the amount of tax so collected or withheld shall be held to be a special fund in trust for

the United States.") (emphasis added).  As such, Hughs had a "legal right over the

property" at the time and did not convert the tax money by withdrawing it from Royal's

bank account.  Therefore, Royal has not stated a claim for conversion.

      Additionally, because tax withholding is never property of the employer, the court

is not convinced that Royal has standing to bring a conversion claim.  In order to have

standing in federal court, "a federal complainant must demonstrate: (1) he has suffered an

actual or threatened injury; (2) a causal connection between the injury complained of and

the challenged action; and (3) the injury can be redressed by a favorable decision."

Marshall v. Meadows, 105 F.3d 904 (4th Cir. 1997).  Royal argues it has standing

because "the trustee (in this case, Royal) is the real party in interest for purposes of

bringing a lawsuit to recover the trust property or to enforce legal rights related to trust

property."  ECF No. 22 at 6. (citing Williams v. Working Benevolent State Grand Lodge,

109 S.C. 233 (1918)).  However, a trustee relationship between the government and an

employer is created only after the employer withholds taxes.  Because there was no such

withholding, Royal was not a trustee at the relevant time and its standing argument fails.

Beyond its allegation of injury as a trustee, Royal has not demonstrated actual or threated

injury in its own right as a result of the alleged conversion.  While Royal alleges that it paid taxes Hughs owed on the bonus, it never made a demand for Hughs to reimburse that tax payment until bringing the present counterclaims almost two years later.  This fact casts doubt over whether there is any "actual or threatened" injury to Royal, as Hughs may willingly reimburse Royal for the tax payment at issue.  Even if Hughs refused to pay Royal for these funds, "there can be no conversion where there is a mere obligation to pay a debt."  Owens v. Andrews Bank & Tr. Co., 265 S.C. 490, 497, 220 S.E.2d 116, 119 (1975) ("[W]here there is merely the relationship of debtor and creditor, an action based on conversion of the funds representing the debt is improper").  Accordingly, Royal has failed to state a claim for conversion, and the court dismisses this counterclaim.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion and dismisses defendants' defamation and theft counterclaims.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 12, 2020**
**Charleston, South Carolina**